**Jeffrey RASKE, Petitioner–Appellee,**

v.

**Bob MARTINEZ, Governor, State of Florida, and Richard Dugger, Secretary, Department of Corrections, Respondents–Appellants.**

No. 88–3101.

United States Court of Appeals, Eleventh Circuit.

July 11, 1989.

Robert A. Butterworth, Atty. Gen., Department of Legal Affairs, Susan A. Maher, Asst. Atty. Gen., Tallahassee, Fla., for respondents-appellants.

Bava Harrison, Tallahassee, Fla., for petitioner-appellee.

Before TJOFLAT and EDMONDSON, Circuit Judges, and ATKINS *, Senior District Judge.

TJOFLAT, Circuit Judge:

Under Florida law, a prisoner who behaves well and diligently performs assigned work can reduce his term of incarceration by earning "gain time." In the district court, petitioner Jeffrey Raske, an inmate in the Florida prison system, sought a writ of habeas corpus, claiming that a 1983 Florida statute which altered the amount and calculation of gain time constituted an unconstitutional *ex post facto* law as applied to prisoners such as himself who were convicted of offenses that occurred prior to the statute's passage. *See* U.S. Const. art. I, § 10, cl. 1 ("No State shall ... pass any ... ex post facto Law....").[1] The district court granted the writ, and the State of Florida now appeals. We affirm.

### I.

Raske is presently serving three concurrent twenty-five year prison sentences imposed by the circuit court of Broward County, Florida, for a series of robberies that occurred in 1982.[2] At the time of Raske's offenses, Florida law provided the following formula for the calculation of gain time:

(1) The [Department of Correction] shall grant the following deductions for gain-time on a monthly basis, as earned, from the sentences of every prisoner who has committed no infraction of the rules of the department or of the laws of the state and who has performed in a satisfactory and acceptable manner the work, duties, and tasks assigned, as follows:

(a) Three days per month off the first and second years of the sentence;

(b) Six days per month off the third and fourth years of the sentence; and

(c) Nine days per month off the fifth and all succeeding years of the sentence....

....

[(2)](b) The department is authorized to grant additional gain-time allowances on a monthly basis as earned up to one day for each day of productive or institutional labor performed by any prisoner ... who has accomplished in a satisfactory and acceptable manner, the work, duties, and tasks assigned. Such gain-time allowances under this section shall be awarded on the basis of diligence of the inmate, the quality and quantity of work performed, and the skill required for performance of the work.

....

(3)(a) An inmate who faithfully performs the assignments given to him in a conscientious manner over and above that which may normally be expected of him ... may be granted on an individual basis from one to six days per month extra gain-time to be deducted from the term of his sentence.

Act of June 16, 1978, ch. 304, § 1, 1978 Fla.Laws 870, 870–71 (codified, as amended, at Fla.Stat. § 944.275 (1979–1981)) [hereinafter the 1978 act].[3] Thus, under the 1978 act, prisoners who diligently performed their assigned duties could earn up to forty-six days of gain time each month.[4]

---

\* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. The Supreme Court has held that "two critical conditions must be present for a criminal or penal law to be *ex post facto:* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (footnotes omitted).

2. Raske was also convicted of another 1982 robbery by the circuit court of Palm Beach County, Florida. For that robbery, Raske received a three and one-half year sentence, which he served concurrently with the three twenty-five year sentences imposed by the Broward County court.

3. In Florida, the state agency in charge of prisons is the Department of Corrections. *See* Fla. Stat. § 944.023 (1987). Our opinion will refer to this agency as "the department."

4. A well-behaving prisoner serving the fifth year of his sentence would receive nine days of basic gain time under Fla.Stat. § 944.275(1)(c) (1981) and in addition to those nine days could receive up to thirty-seven days of incentive gain time under Fla.Stat. § 944.275(2)(b) and (3)(a) (1981)

In 1983, the Florida legislature amended section 944.275 to provide as follows:

(1) The [department] is authorized to grant deductions from sentence in the form of gain-time to encourage satisfactory prisoner behavior, to provide incentive for prisoners to participate in productive activities and to reward prisoners who perform outstanding deeds or services.

. . . .

(4)(a) As a means of encouraging satisfactory behavior, the department shall grant basic gain-time at the rate of 10 days for each month of each sentence imposed on a prisoner. . . .

(b) For each month a prisoner works diligently . . . the department may grant up to 20 days of incentive gain-time, which shall be credited and applied monthly.

. . . .

(5) When a prisoner is found guilty of an infraction of the laws of this state or the rules of the department, gain-time may be forfeited according to law.

Correctional Reform Act of 1983, ch. 131, § 8, 1983 Fla.Laws 442, 442–43 (codified at Fla.Stat. § 944.275 (1987)) [hereinafter the 1983 act]. Compared to the 1978 provisions, the 1983 act increased the amount of basic gain time inmates could earn for general good behavior from a three/six/nine day variable rate to ten days per month; the potential incentive gain time available to prisoners, however, decreased from thirty-seven to twenty days per month.

The department has applied the method of calculating gain time adopted in the 1983 act to all inmates—including those convicted of offenses that occurred before the act's passage. See Fla.Admin.Code Ann. r. 33–11.0065 (1988) (making no distinction between pre- and post-act offenders). The State admits that under the 1978 gain time system, petitioner's estimated release date is September 13, 1995 and that under the 1983 act, petitioner's estimated release date is April 5, 1997.

for diligent or exceptional performance of his

## II.

Our decision in this case is controlled by the principles announced by the Supreme Court in *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). In that case, the Court was also faced with legislative alterations to the method by which the department calculated gain time for Florida prisoners. Under a 1963 Florida statute, gain time was awarded as follows:

(1) The [department] shall grant the following deductions for gain time from the sentences of every prisoner who has committed no infraction of the rules or regulations of the board or the division, or of the laws of the state, and who has performed in a faithful, diligent, industrious, orderly, and peaceful manner, the work, duties, and tasks assigned to him, to-wit:

Five (5) days per month off the first and second years of his sentence;

Ten (10) days per month off the third and fourth years of his sentence; and

Fifteen (15) days per month off the fifth and all succeeding years of his sentence. . . .

Act of May 31, 1963, ch. 243, § 1, 1963 Fla.Laws 547, 548 (codified, as amended, at Fla.Stat. § 944.27(1) (1963–1977)) [hereinafter the 1963 act]. In 1978, this five/ten/fifteen day scheme was changed to the three/six/nine day system described above. See Act of June 16, 1978, ch. 304, § 1, 1978 Fla.Laws 870, 870–71. A Florida prisoner challenged the constitutionality of the 1978 gain time provision, claiming that the law was *ex post facto* as applied to individuals such as himself who committed offenses before the effective date of the 1978 act. The Court agreed, concluding that "the new provision constricts the inmate's opportunity to earn early release, and thereby makes more onerous the punishment for crimes committed before its enactment. This result runs afoul of the prohibition against *ex post facto* laws." *Weaver*, 450 U.S. at 35–36, 101 S.Ct. at 968 (footnote omitted).

assigned duties.

Although the facts in *Weaver* are on all fours with the facts of the instant case, the State makes three arguments as to why the 1983 act is not *ex post facto* as applied to petitioner. We consider them in turn.

### A.

The State first advances several arguments that attempt to distinguish between the unconstitutional provisions of the 1978 act, which reduced the amount of *basic* gain time available to inmates, and the provisions of the 1983 act, which reduce the availability of *incentive* gain time. These arguments center on the State's contention that basic gain time is "automatic," while incentive gain time is "discretionary."

### 1.

■ The State contends that basic gain time is fundamentally different than incentive gain time because basic gain time is automatically earned by prisoners, while incentive gain time is earned only at the discretion of prison officials. Because incentive gain time is discretionary in nature, the State contends that petitioner has no right to receive incentive gain time and that the State therefore can alter the method by which incentive gain time is calculated without violating the *ex post facto* clause of the Constitution.[5] Because we believe that both basic and incentive gain time are discretionary in nature, we do not find the State's argument to be persuasive.[6]

An examination of the statutory language authorizing basic gain time reveals that a prisoner must satisfy certain condi-

tions in order to receive basic gain time and that the department is the judge of whether those conditions have been met. Thus, the 1963 act provided that basic gain time would be awarded only to prisoners who performed their duties "in a faithful, diligent, industrious, orderly, and peaceful manner." Act of May 31, 1963, ch. 243, § 1, 1963 Fla.Laws at 548. Similarly, the 1978 act allowed the department to award basic gain time only if the prisoner "performed in a satisfactory and acceptable manner the work, duties, and tasks assigned." Act of June 16, 1978, ch. 304, § 1, 1978 Fla.Stat. at 870. Finally, we note that although the 1983 act does automatically give prisoners ten days of gain time, that gain time can be forfeited if, among other things, the prisoner "neglect[s] to perform the work duties, and tasks assigned to him in a faithful, diligent, industrious, orderly, and peaceful manner." Fla.Stat. § 944.28(2)(a) (1987).[7]

We see no fundamental distinction between the conditions that a prisoner must satisfy to receive basic gain time and the conditions that a prisoner must satisfy to earn discretionary gain time. In both cases, the department decides in its sole discretion whether the prisoner has behaved well enough or worked diligently enough to earn gain time. We therefore reject the State's attempt to distinguish the 1983 act from the 1978 act at issue in *Weaver* by a supposed distinction between the nature of basic and incentive gain time.

### 2.

In a second argument, the State contends that incentive gain time is discretionary

---

**5.** We note that "a law need not impair a 'vested right' to violate the *ex post facto* prohibition." *Weaver*, 450 U.S. at 29, 101 S.Ct. at 964 (footnote omitted). Thus, the Supreme Court has noted that:

> Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.

*Id.* at 30–31, 101 S.Ct. at 965 (footnote omitted).

**6.** We agree, of course, that incentive gain time is discretionary. We note, however, that this discretion is not complete. Thus, for example, the State does not contend that a prisoner who has performed his work in an outstanding manner can legally be denied incentive gain time for that work, despite its so-called "discretionary" nature. *See Pettway v. Wainwright,* 405 So.2d 1279 (Fla.Dist.Ct.App.1984).

**7.** Thus, the 1983 act merely alters the mechanism by which the State exercises its discretion with regard to basic gain time.

because the duties that allow a prisoner to earn such gain time are a matter of legislative grace. *See, e.g., Newman v. Alabama,* 559 F.2d 283, 292 (5th Cir.1977) (Constitution does not mandate that states provide inmates with work.). We agree that in this sense incentive gain time could be characterized as discretionary.[8] Such a characterization, however, does not prevent the 1983 act from being *ex post facto* as applied to the petitioner.[9]

In *Weaver,* the Supreme Court stated clearly that "even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the [*ex post facto* clause] if it is both retrospective and more onerous than the law in effect on the date of the offense." *Weaver,* 450 U.S. at 30–31, 101 S.Ct. at 965 (footnote omitted). Thus, even though the opportunity to earn incentive gain time is dependent on the grace of the legislature and the availability of jobs, we conclude that if the State affords its inmates such work, it is bound to reward prisoners for their services at a gain time rate at least equally advantageous to that in effect at the time of those prisoners' offenses.

**3.**

In a third attempt to distinguish between basic and incentive gain time, the State notes that once the department has determined, in its discretion, that a prisoner has performed his duties in a satisfactory manner, the department has no discretion as to the *amount* of basic gain time merited by the performance of those duties.[10] With regard to incentive gain time, however, the State notes that the department has discretion to determine both whether the prisoner has performed his duties in a diligent or exceptional manner and the amount of incentive gain time that the prisoner's performance merits. Relying on this distinction, the State argues that since the petitioner may never perform his duties in a manner that would make him eligible for the greater amount of incentive gain time previously available under the 1978 act, any disadvantage to the petitioner is too speculative to constitute a violation of the *ex post facto* clause.

We agree that a prisoner may be less likely to earn incentive gain time than basic gain time.[11] Under *Weaver,* however, we are not to speculate as to whether an individual prisoner's future behavior will result in an increased term of incarceration under the new gain time provision. Instead, the decision requires us to examine whether a prisoner is "disadvantaged by the reduced *opportunity* to shorten his time in prison." *Id.* at 33–34, 101 S.Ct. at 967 (emphasis added). Thus, even though, in fact, petitioner may not so diligently perform his assigned duties as to earn the full thirty-seven days of incentive gain time previously available under the 1978 act, the elimination of the opportunity to do so is sufficient to make the 1983 act *ex post facto* as applied to petitioner.

---

8. Of course, since the State has no constitutional obligation to give inmates gain time at all, the basic gain time at issue in *Weaver* was also discretionary in this sense.

9. The State does not contend that petitioner is incarcerated in a facility in which work is not offered to inmates or in which work is not available. In such a situation, of course, a prisoner would not be harmed by the application of the 1983 act and therefore would have no claim under the *ex post facto* clause.

10. Thus, under the 1978 act the State *must* award a well-behaving prisoner either three, six, or nine days of basic gain time, depending on how long the prisoner has been incarcerated. *See* Act of June 16, 1978, ch. 304, § 1, 1978 Fla.Laws at 870. Similarly, the Department *must* award a well-behaving prisoner ten days

of basic gain time under the 1983 act. *See* Fla.Stat. § 944.275(4)(a) (1987).

11. Although we have noted that both basic and incentive gain time are discretionary in nature, the department clearly awards basic gain time much more readily than incentive gain time. Thus, an inmate earns basic gain time "simply for avoiding disciplinary infractions and performing his assigned tasks." *Weaver,* 450 U.S. at 35, 101 S.Ct. at 968. Incentive gain time, however, is subject to a higher standard: a prisoner must diligently participate in positive activities, such as institutional labor, vocational training, academic studies, or other rehabilitative programs. *See* Fla.Stat. § 944.275(4)(b) (1987); Act of June 16, 1978, ch. 304, § 1, 1978 Fla.Laws at 871 (codified at Fla.Stat. § 944.275(2)(b), (3)(a) (1981)).

## B.

As its second argument, the State contends that the 1983 act does not violate the Constitution's prohibition against *ex post facto* laws because the 1983 provision does not disadvantage the petitioner when compared *in toto* with the 1978 act.[12] Specifically, the State argues that the increased allotment of basic gain time available under the 1983 act compensates for any reduction in the amount of incentive gain time previously available under the 1978 act.[13] We disagree.

We recognize that an inmate who performs his duties in only an adequate manner may be better off under the 1983 act— such a prisoner will receive more basic gain time, and is not injured by the elimination of incentive gain time previously awarded

only for diligent or outstanding job performance. For purposes of our *ex post facto* analysis in this case, however, this fact is irrelevant.[14] Under *Weaver*, we need not conclude that a new law disadvantages *every* prisoner or the *average* prisoner; instead, our analysis centers on whether the new law disadvantages the particular prisoner who is now before the court. *See Weaver*, 450 U.S. at 33–34, 101 S.Ct. 966–67.

Comparing the 1983 act *in toto* with the 1978 act, we note that under the 1983 act petitioner loses the opportunity to earn seventeen extra days of incentive gain time, in exchange for which he receives one extra day of basic gain time.[15] As a result, petitioner's tentative release date under the 1978 act is more than one and one-half years earlier than under the 1983 act. Giv-

**12.** In *Weaver*, the Supreme Court apparently agreed that the federal courts must examine a challenged act as a whole in determining whether it is unconstitutionally *ex post facto*. *See Weaver*, 450 U.S. at 31–32, 101 S.Ct. at 965 (looking at 1978 act as a whole); *id.* at 37–38, 101 S.Ct. at 969 (Rehnquist, J., concurring) (specifically noting that a challenged act must be viewed *in toto*). In the context of the instant dispute, the State asks us to agree that the opportunity to earn ten days of basic gain time and twenty days of incentive gain time under the 1983 act is worth the opportunity to earn three, six, or nine days of basic gain time and thirty-seven days of incentive gain time under the 1978 act. As an abstract proposition, of course, such a conclusion is impossible to draw because it requires us to weigh apples against oranges. Moreover, the case or controversy requirement requires us to avoid such abstract determinations precisely because they raise adjudicative difficulties. *See* U.S. Const. art. III, § 2.

**13.** In *Weaver*, the Court faced a similar argument: Florida argued that the increased incentive gain time available under the 1978 act compensated for the reduction of basic gain time previously available under the 1963 system for good conduct. The Court rejected this trade-off, noting as follows:

> [N]one of these provisions for extra [incentive] gain time compensates for the reduction of gain time available solely for good conduct. The fact remains that an inmate who performs satisfactory work and avoids disciplinary violations could obtain more gain time per month under the [1963 act] than he could for the same conduct under the [1978 act]. To make up the difference, the inmate has to

satisfy the extra conditions specified by the discretionary gain-time provisions. Even then, the award of the extra gain time is purely discretionary, contingent on both the wishes of the correctional authorities and special behavior by the inmate, such as saving a life or diligent performance in an academic program. In contrast, under both the new and old statutes, an inmate is automatically entitled to the monthly gain time simply for avoiding disciplinary infractions and performing his assigned tasks.

*Weaver*, 450 U.S. at 35, 101 S.Ct. at 967–68 (footnote & citation omitted).

**14.** For example, on the facts of *Weaver*, we note that a prisoner who performed his duties in a diligent or exceptional manner would have been better off under the 1978 act than the 1963 act. Such a prisoner would receive up to forty-six days of gain time per month, instead of the fifteen days per month allowed under the 1963 act. If the Court in *Weaver* had been concerned with the constitutionality of the statute as applied to prisoners in general, this fact would, of course, have been very relevant. The *Weaver* Court, however, was not concerned with whether the 1978 act disadvantaged prisoners as a whole; instead, the Court was concerned only with the effect of the 1978 act on the individual prisoner before it. Given this focus, the effect of the 1983 act on a prisoner who performs his duties only adequately is as irrelevant to our decision in this case as was the effect of the 1978 act on a diligent prisoner in *Weaver*.

**15.** Petitioner has been incarcerated since June 15, 1983; therefore, under the 1978 act petitioner would accrue nine days per month of basic gain time. *See* Fla.Stat. § 944.275(1)(c) (1981).

en this information, we have no doubt that the 1983 act is more onerous than the 1978 act.

### C.

In its third challenge, the State maintains that in passing the 1978 act, the Florida legislature allowed inmates an increased amount of discretionary gain time in order to offset the reductions in automatic gain time effected by the act. The Supreme Court having found this offset unconstitutional as applied to prisoners convicted of offenses occurring before the act's passage, the State contends that the Florida legislature now should be entitled to withdraw these increased benefits. This argument is frivolous. Although we recognize that Florida might not have enacted the 1978 statute had the legislature known that the law would be *ex post facto* as applied to pre–1978 offenders, the Florida legislature did, in fact, enact these provisions. The federal courts recognize no doctrine of "constitutional mistake" that can absolve a legislature from the consequences of a misapprehension concerning a statute's constitutionality. Thus, the fact that the Florida legislature did not realize that the 1978 act would be *ex post facto* by no means prevented the rights guaranteed by the 1978 act from vesting in individuals sentenced for offenses committed after the statute's effective date.

### III.

In sum, we conclude that the provisions of Fla.Stat. § 944.275 (1987) that allow prisoners to earn only twenty days per month of incentive gain time constitute an unconstitutional *ex post facto* law as applied to petitioner.[16] The district court's decision

---

16. The effect of our decision, of course, is to require that the State of Florida "apply, if possible, the law in place when [defendant's] crime occurred." *Weaver,* 450 U.S. at 36 n. 22, 101 S.Ct. at 968 n. 22. In so doing, the State must determine whether the unconstitutional provisions of the 1983 act are severable. If so, petitioner will reap the benefit of the increased

granting petitioner a writ of habeas corpus is therefore

AFFIRMED.

---

basic gain time provided by the 1983 act, while also receiving the benefit of the thirty-seven days of incentive gain time provided by the 1978 act. If not, petitioner's sentence will be completely regulated by the terms of the 1978 act. These matters, however, are purely questions of state law, which must be resolved by the Florida courts.