614 So.2d 1189 (1993)
R.A.H., a Child, Appellant,
v.
STATE of Florida, Appellee.
No. 92-2782.
District Court of Appeal of Florida, First District.
February 26, 1993.
*1190 Nancy A. Daniels, Public Defender, and Nancy L. Showalter, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Wendy S. Morris, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
R.A.H. was adjudicated a delinquent child and committed to a juvenile facility identified as a "halfway house."[1] Thereafter, on or about April 15-16, 1992, he left that facility without permission. He was charged and adjudicated guilty of escape under section 39.112, Florida Statutes (1989).[2] Appealing this delinquency order, R.A.H. contends that the trial court erred in denying his motion to dismiss the escape charge. He argues that section 39.112, the statute on which the charge was based, was repealed effective October 1, 1990, when section 39.061, Florida Statutes (Supp. 1990),[3] became effective. Ch. 90-208, §§ 5 and 17, at 1094 and 1160, Laws of Fla. Thus, R.A.H. urges, section 39.112 was not in effect in April 1992 when he allegedly committed the charged offense, and that statute cannot lawfully serve as the basis for a charge of escape in this case.
The state contends that the trial court correctly adjudicated R.A.H. guilty of escape pursuant to section 39.112 based on the premise that section 39.112 remained effective on the date of the charged offense. The state acknowledges that section 39.112 had been repealed effective October 1, 1990, and that in D.P. v. State, 597 So.2d 952 (Fla. 1st DCA 1992), this court held that the portion of section 39.061 relating to escape from residential commitment facilities was unconstitutional and invalid, but it argues that the former statute was revived or remained effective based on the principle that, "It is well settled that, where a repealing act is adjudged unconstitutional, the statute it attempts to repeal remains in force. Messer v. Jackson, 126 Fla. 678, 171 So. 660, 662 (1936); *1191 Henderson v. Antonacci, 62 So.2d 5, 7 (Fla. 1952)." (Answer Brief at p. 7). The state cites to State ex rel. Boyd v. Green, 355 So.2d 789 (Fla. 1978), as "[a] prime example of the application of the principle of reinstatement." (Id.) It also references Florida Homebuilders Ass'n v. Division of Labor, Bureau of Apprenticeship, 367 So.2d 219 (Fla. 1979), for the same proposition. The state cites Waldrup v. Dugger, 562 So.2d 687 (Fla. 1990), and Smith v. Smathers, 372 So.2d 427 (Fla. 1979), as authority for this court to create a "hybrid" statute containing elements taken from two different legislative schemes adopted in different years, i.e., combining the portion of section 39.112 that relates to the unconstitutional portions of section 39.061 with the surviving constitutional provisions in section 39.061 for the purpose of defining the offense of "escape" after this court's decision in D.P.
We reject the state's argument that section 39.112 can serve to legally support the escape conviction in this case. The charged offense occurred after the October 1, 1990, effective date of the repeal of that section by chapter 90-208, section 17, Laws of Florida. This court's ruling in D.P. v. State, 597 So.2d 952, held unconstitutional only a portion of the language in section 39.061 created by section 5 of chapter 90-208.[4] Our decision in D.P. did not invalidate the entire act, or even all of section 39.061, nor did it invalidate the repealer clause in section 17 of chapter 90-208. There is, therefore, no basis in law for treating the decision in D.P. as having the legal effect of reviving the validity of repealed section 39.112. For the following reasons, the cases cited to us by the state are materially distinguishable and do not justify the revival of a repealed statute that defines a criminal offense.
In Messer v. Jackson, 171 So. 660, the supreme court held that a statute purporting to regulate motor vehicles was not validly enacted by the legislature, observing that since the act "did not become a law as provided by the Constitution of the state of Florida, it follows that the law which it purported to repeal or supersede remains in full force and effect." Id. at 662. Similarly, in Henderson v. Antonacci, 62 So.2d 5, 7, the trial court ruled that "[s]ections 855.01 and 855.02, F.S.A., as amended by Laws of Florida 1951," regulating the operation of various businesses on Sunday, were unconstitutional. The supreme court upheld the trial court's ruling in respect to the 1951 amendments to the statutes, but it further held that the trial court exceeded its authority in holding sections 855.01 and 855.02 invalid in their entirety because the complaint only challenged the validity of the statutes as amended in 1951. The court cited to Messer v. Jackson in support of its conclusion that sections 855.01 and 855.02, as they existed before the challenged 1951 amendments, remained in effect, no doubt because all of the amending provisions were invalidated. Likewise, in Florida Homebuilders Ass'n v. Division of Labor, Bureau of Apprenticeship, 367 So.2d 219, the supreme court invalidated the entire 1951 act amending chapter 509 in regard to the office of hotel commissioner, including the repealer provisions, and held that the prior provisions in chapter 509 remained in effect.
Accordingly, each of these cases supports only the proposition that where a repealing act is adjudged unconstitutional, the statute it attempts to repeal remains in force. In each of these cases, the repealer provision of the unconstitutional enactment was invalidated ab initio, so as to negate any legally effective repeal of the prior legislation. As our decision in D.P. did not invalidate all of section 39.061 and did not invalidate the repeal of section 39.112, these cases are wholly inapposite.
The state's reliance on State ex rel. Boyd v. Green, 355 So.2d 789 (Fla. 1978), as a prime example of the application of this principle in circumstances analogous to this case is also misplaced. In Green, the supreme *1192 court considered the validity of chapter 77-312, section 1, Laws of Florida [§ 921.131, Fla. Stat. (1977)], which established separate hearings for determining issues of guilt and insanity in criminal trials. Section 10 of that act repealed rule 3.210, Florida Rules of Criminal Procedure, which contained provisions governing the procedure for determining issues of guilt and insanity in a single trial. The supreme court held that the separate trial provision in section 1 of the act was invalid as an unconstitutional denial of due process. The court further held that the repeal of rule 3.210 by section 10 was "so connected and dependent" on the new legislative scheme established in section 1 that, notwithstanding the severability clause in section 11 of that act, the two provisions could not be treated as severable and that the unconstitutionality of section 1 likewise invalidated the repeal of the rule by section 10 on the principle that, "Where one provision is unconstitutional, all provisions dependent on it must also fall." Id. at 794. Hence, Green is similar to the other cases discussed above  the repealer provision was invalidated ab initio by the court's decision.
The state argues that in the case before us no portion of section 39.061 remains valid and enforceable after our decision in D.P., that the repeal of section 39.112 was not severable from the new provisions in section 39.061, and that section 39.112 was necessarily reinstated in its entirety. The state cites several cases in support of its contention that these statutory provisions are not severable. We reject the state's severability argument, primarily because the state took the opposite position in its motion for rehearing in D.P., filed after this court's original opinion in that case had held section 39.061 in its entirety unconstitutional. The state's motion for rehearing urged that only the portion of the language in that section dealing with residential commitment facilities should be invalidated and that the remainder should remain in effect. This contention essentially conceded that the specific language regarding residential facilities was severable from the remainder of the section. We acceded to the state's request, withdrew the original opinion, and reissued a new opinion on rehearing that invalidated only a limited portion of section 39.061. Having previously accepted the state's argument that the invalid provision in section 39.061 was severable from the remainder, we are not disposed to now recede from that determination.
In all of the above cases cited by the state, the entire statutory provision or amendment was held unconstitutional, including the repealer provisions, so that the former statutory provisions remained unrepealed and intact. Unlike those decisions, our decision in D.P. did not invalidate the entire statute, did not invalidate the repealer provision, and left a significant portion of section 39.061 in effect. Thus, these decisions cited by the state afford no legal basis for reviving the repealed section 39.112.
The state also argues that even though only a portion of a statute (section 39.061) is held unconstitutional, the court can nevertheless revive the section of the former, repealed statute (section 39.112) relating to the same subject and "create a hybrid statute" consisting of portions of both statutes. As authority for this proposition, the state relies on Waldrup v. Dugger, 562 So.2d 687 (Fla. 1990), and Smith v. Smathers, 372 So.2d 427 (Fla. 1979). We find this argument unpersuasive for the following reasons.
In Waldrup v. Dugger, a prisoner petitioned the supreme court for a writ of habeas corpus, alleging that the more restrictive provisions in the 1983 amendments to the state's gain-time statutes, Ch. 83-131, § 8, Laws of Fla., were being applied retroactively to deprive him of an earlier release from prison, in violation of the constitutional prohibition against ex post facto laws. The supreme court held that although the provisions of that statute relating to basic gain-time were valid, the provisions relating to incentive gain-time were unconstitutional, so the court barred the Department of Corrections from applying these latter provisions to Waldrup and similarly situated prisoners. The court noted that the effect of this decision was twofold: *1193 it reinstated the incentive gain-time statutes in force at the time of Waldrup's offense, and it invalidated the 1983 incentive gain-time revisions as applied to these inmates. Since the basic gain-time statute was more favorable to Waldrup and similarly situated inmates, the court found no ex post facto problem with applying these provisions retroactively, and it acceded to DOC's request to allow DOC to do so, at least partly as a matter of administrative convenience. The court noted that allowing DOC to rely on separate portions of both statutes created a "hybrid" statute containing elements taken from two different legislative schemes adopted in different years, but the court concluded that such a "hybrid" statute would be appropriate since the valid provisions of both statutes were severable from the unconstitutional provisions. Even so, however, the court cautioned in footnote 16, at page 693, that
the courts should disfavor creating a hybrid statute comprised of parts taken from both present-day and superseded enactments. Such an action interjects the judiciary into a realm of policy considerations that properly belongs to the legislature. However, we entertain a hybrid here only because we have been requested to do so by the administrative agency entrusted by the legislature to oversee and administer the particular statutes now under review. Because DOC exercises this broad prerogative, we believe it has authority to waive any objection the state otherwise might raise regarding the creation of a hybrid statute of the type suggested here... .
The decision in Waldrup is materially distinguishable from the instant case. In the first place, the supreme court required DOC to apply the former, more favorable provisions of the incentive gain-time statute to Waldrup because the constitution prohibited the state from changing such provisions to make them less favorable to the inmate. In essence, the legislature had no power under the constitution to take away the more favorable gain-time rights that existed at the time of Waldrup's offense; those rights had to continue subsisting to meet constitutional requirements. The court allowed the old incentive gain-time provisions to be retroactively enforced with the new basic gain-time provisions, not only because the affected provisions were severable, but also as a matter of administrative convenience since the agency wanted it that way.
In the case before us, no existing rights protected by the constitution were taken away by the 1990 act amending chapter 39. On the contrary, a proscriptive statute defining a criminal offense was repealed and an entirely new definition of the criminal offense, that coincided with a new concept regarding classification of residential commitment facilities for juveniles, was substituted therefor. The repealer provisions in the 1990 act have not been invalidated so as to leave section 39.112 in effect. No preexisting right protected by the constitution was taken away by the 1990 repeal of section 39.112, which the court was required to protect and maintain in effect.
For similar reasons, the supreme court's decision in Smith v. Smathers, 372 So.2d 427, is materially distinguishable. There, the supreme court invalidated, on constitutional grounds, those portions of a 1977 act that operated to abolish the existing right of voters to vote for a write-in candidate of their choice. As a matter of administrative convenience, the court left in force the former sections of Florida Statutes providing for write-in votes that had been repealed by the 1977 act to provide a procedure for write-in votes in future elections until properly changed by the legislature. Thus, not only did that case not involve a statute defining a criminal offense, the court preserved in force the former statute only as a means of protecting against the loss of a constitutionally protected right.
We have been cited to no legal authority that recognizes the creation of a "hybrid" statute in order to revive a repealed statutory definition of a criminal offense, and we have found none in our own research. To apply that concept in this case to revive the language in section 39.112 defining the offense of escape from a halfway house and make it applicable to offenses occurring after the date of that section's repeal *1194 would be directly counter to the cautionary warning about the use of "hybrid" statutes set forth in Waldrup v. Dugger. Moreover, to apply the so-called "hybrid" concept to criminal cases such as this would potentially violate constitutional requirements that statutes defining criminal offenses be sufficiently certain in language and meaning that they give people of ordinary intelligence fair notice of what conduct is prohibited by the statute. E.g., Warren v. State, 572 So.2d 1376 (Fla. 1991).[5] Ordinarily, this means that one should be able to look to the Florida Statutes in effect on the date an alleged offense occurred and determine therefrom whether a person's conduct violated any criminal statutory proscription. Were we to accept the state's "hybrid" argument in this case, however, a "person of ordinary intelligence" would not only have to look at the Florida Statutes in effect on the date of the offense but also be sufficiently skilled in legal research to discover that a portion of the juvenile escape statute in section 39.061 had been held unconstitutional and conclude that a portion of the repealed section 39.112 had been revived and now governed that person's conduct. We do not believe that the supreme court's approval of the "hybrid" statute concept can be extended this far.
For the foregoing reasons, Appellant's adjudication of guilt of the offense of escape based on section 39.112 is reversed and this cause is remanded with directions to dismiss the escape charge.
REVERSED AND REMANDED.
BARFIELD and MINER, JJ., concur.
NOTES
[1] A "halfway house" is defined as "a community-based residential program for 12 or more committed delinquents that is operated by the department." § 39.01(25), Fla. Stat. (1991).
[2] Section 39.112 provides:

39.112 Escapes from a juvenile facility.  An escape from any halfway house, training school, boot camp, or secure detention facility maintained for the treatment, rehabilitation, or detention of children who are alleged or found to have committed delinquent acts or violations of law constitutes escape within the intent and meaning of s. 944.40 and is a felony in the third degree.
[3] Section 39.061 provides:

39.061 Escapes from secure detention or residential commitment facility of restrictiveness level VI or above.  An escape from any secure detention or any residential commitment facility of restrictiveness level VI or above maintained for the treatment or rehabilitation of children found to have committed delinquent acts or violations of law constitutes escape within the intent and meaning of s. 944.40 and is a felony of the third degree.
[4] The decision in D.P. invalidated only that portion of section 39.061 pertaining to a juvenile's escape from "any residential commitment facility of restrictiveness level VI or above maintained for the treatment or rehabilitation of children" and left in effect that portion of section 39.061 dealing with escape from "secure detention" facilities.
[5] In that case the court stated:

A statute which does not give people of ordinary intelligence fair notice of what constitutes forbidden conduct is vague. [Citations omitted.] The language of a statute must "provide a definite warning of what conduct" is required or prohibited, "measured by common understanding and practice." [Citation omitted.] To this end, a statute must be written "in language which is relevant to today's society." [Citation omitted.]
572 So.2d at 1377.