521 So.2d 1097 (1988)
Joseph C. BLANKENSHIP, Petitioner,
v.
Richard L. DUGGER, etc., Respondent.
No. 71024.
Supreme Court of Florida.
March 10, 1988.
*1098 Joseph C. Blankenship, in pro. per.
Robert A. Butterworth, Atty. Gen., and Marjorie Fallon Smith, Asst. Atty. Gen., Tallahassee, for respondent.
PER CURIAM.
Petitioner, a state prisoner, files this petition for writ of habeas corpus, seeking to invoke this Court's jurisdiction under article V, section 3(b)(9) of the Florida Constitution. We deny the petition, but because other inmates may file similar petitions, we are publishing this opinion to spare the needless expense of time and money.
The petition involves administrative gain time under two statutes passed in response to prison overcrowding. The first, section 944.598, was originally enacted in 1983.[1] Upon certification by the Department of Corrections that the state prison population has reached ninety-eight percent of capacity and verification by the Governor, the statute calls for the sentences of prisoners to be reduced in increments until the population is decreased to ninety-seven percent. A 1986 amendment changed the triggering figure to ninety-nine percent and the target figure to ninety-eight percent. Neither the Department of Corrections nor the Governor has ever taken the steps necessary to activate the reduction of sentences under this section.
In 1987 the Legislature enacted chapter 87-2, Laws of Florida, which became section 944.276,[2] and which was implemented almost immediately by the granting of gain *1099 time. This statute is similar to section 944.598, as amended, with two pertinent differences: (1) section 944.276 has a ninety-eight percent triggering figure and a ninety-seven percent target figure, and (2) section 944.598 grants administrative gain time to all inmates eligible to receive gain time, while section 944.276 excludes prisoners convicted of certain serious felonies.
Petitioner was convicted and sentenced in 1985 for crimes which occurred in 1984. He is precluded from administrative gain time under section 944.276 because of his conviction for sexual battery. He contends that section 944.276 is an ex post facto law as applied to him. The argument runs like this: The fact that section 944.276 gain time has been granted since early in 1987 proves that the prison population has reached ninety-eight percent. Under the original version of section 944.598, he would be entitled to the administrative gain time that is being granted pursuant to section 944.276. Thus, he asserts that the latter section took away what section 944.598 would have given him.
In order for a criminal law to be declared ex post facto, it must apply to events occurring before it existed and must disadvantage the offender affected by it. Weaver v. Graham, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). An ex post facto law is one that allows for prosecution and conviction for actions that were lawful at the time of their commission, or imposes a punishment more severe than that assigned by law when the crime occurred, or changes the proof necessary to convict. Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).
Petitioner maintains that section 944.276 imposes greater punishment than that set out by law at the time he committed his crime because it takes away gain time that would have automatically accrued to him under section 944.598 as originally enacted. This argument must fail, if for no other reason than because section 944.598 has never been implemented and, therefore, cannot be said to have created any rights for petitioner. Thus, it is irrelevant which version of section 944.598 was in existence when the crimes were committed or whether any version of it was in effect. As section 944.598 does not apply, section 944.276 governs the case.
Petitioner's argument that his case is controlled by Weaver is misplaced. In Weaver the Supreme Court of the United States declared that a Florida law that reduced gain time was ex post facto as applied to prisoners whose crimes were committed before the law was changed. Initially, it should be observed that Weaver is not on point; it dealt with "good time," i.e., time off a prisoner's sentence awarded for exhibiting good behavior. The statutes at issue here award gain time purely for the administrative convenience of the Department of Corrections. Moreover, since these statutes are procedural in nature, as contrasted to the substantive statute considered in Weaver v. Graham, they do not create substantive rights. A retrospective statute may work to a person's disadvantage so long as it does not deprive the person of any substantial right or protection. See Dobbert, 432 U.S. at 293-94, 97 S.Ct. at 2298-99. Under Weaver, prisoners entering the correctional system do have a statutory right under section 944.275, Florida Statutes (1985), to "good time" gain time, and it will automatically accrue to them if their behavior meets certain standards. However, when petitioner's crimes were committed, there was no guarantee that the prison population would ever reach ninety-eight percent of capacity while he was incarcerated. Petitioner had no control over the factors that would lead to the Department of Corrections granting administrative gain time.
Petitioner also argues due process violations under both the federal and state constitutions, claiming that section 944.598 gave him a liberty interest, and the Department of Corrections, by implementing section 944.276 and not the older statute, took this interest away without due process of law. See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). We disagree. Section 944.598 did not create a liberty interest because it was never implemented, and petitioner had no right to *1100 require it to be implemented. Petitioner cannot claim a liberty interest under section 944.276 because he is excluded from its ambit due to the nature of the crime he committed.
Because the petitioner has not demonstrated that he is being incarcerated in violation of law, the petition is hereby denied.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Section 944.598, Florida Statutes (1983), read in pertinent part:

(1) The Department of Corrections shall advise the Governor of the existence of a state of emergency in the state correctional system whenever the population of the state correctional system exceeds 98 percent of the lawful capacity of the system for males or females, or both. In conveying this information, the secretary of the department shall certify the rated design capacity, maximum capacity, lawful capacity, system maximum capacity, and current population of the state correctional system. When the Governor verifies such certification by letter, the secretary shall declare a state of emergency.
(2) Following the declaration of a state of emergency, the sentences of all inmates in the system who are eligible to earn gain-time shall be reduced by the credit of up to 30 days gain-time, in 5-day increments, as may be necessary to reduce the inmate population to 97 percent of lawful capacity of the system.
[2] 944.276 Administrative gain-time.

(1) Whenever the inmate population of the correctional system reaches 98 percent of lawful capacity as defined in s. 944.598, the secretary of the Department of Corrections shall certify to the Governor that such condition exists. When the Governor acknowledges such certification in writing, the secretary may grant up to a maximum of 60 days administrative gain-time equally to all inmates who are earning incentive gain-time, unless such inmates:
(a) Are serving a minimum mandatory sentence under s. 775.082(1) or s. 893.135;
(b) Are serving the minimum mandatory portion of a sentence enhanced by s. 775.087(2);
(c) Were convicted of sexual battery or any sexual offense specified in s. 917.012(1) and has [sic] not successfully completed a program of treatment pursuant to s. 917.012; or
(d) Were sentenced under s. 775.084.
(2) The authority granted to the secretary shall continue until the inmate population of the correctional system reaches 97 percent of lawful capacity, at which time the authority granted to the secretary shall cease, and the secretary shall notify the Governor in writing of the cessation of such authority.