683 So.2d 109 (1996)
Richard Bing GWONG, Petitioner,
v.
Harry K. SINGLETARY, Jr., etc., Respondent.
No. 87824.
Supreme Court of Florida.
October 10, 1996.
Opinion Denying Rehearing November 22, 1996.
*110 Baya Harrison, III, Monticello, for Petitioner.
Louis A. Vargas, General Counsel and Susan A. Maher, Deputy General Counsel, Department of Corrections, Tallahassee, for Respondent.
Robert A. Butterworth, Attorney General; and Jason Vail and Joslyn Wilson, Assistant Attorneys General, Tallahassee, for Amicus Curiae, the Office of the Attorney General.
OVERTON, Justice.
We have for review Richard Bing Gwong"s petition for writ of mandamus, in which he asks this Court to require the Florida Department of Corrections (the department) to make incentive gain-time available to certain inmates currently being denied eligibility for such gain-time by Florida Administrative Code Rule 33-11.0065 (1996). We have jurisdiction. Art. V, § 3(b)(8), Fla. Const. The rule amendment contested by Gwong retroactively denies to certain prisoners, who have 85% or less of their prison sentences remaining, the ability to earn incentive gain-time. For the reasons expressed, we find that the United States Supreme Court's opinion in Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), and our opinion in Waldrup v. Dugger, 562 So.2d 687 (Fla.1990), mandate that we grant the petition.
Gwong is currently serving a twenty-two-year sentence imposed as a result of his second-degree murder conviction for a homicide committed on January 13, 1987. He was sentenced on February 24, 1989. He has less than 85% of his sentence remaining. On the date that Gwong committed his offense, the law provided that he was eligible to earn incentive gain-time.[1] Specifically, section *111 944.275(4)(b), Florida Statutes (1985),[2] stated:
For each month in which a prisoner works diligently, participates in training, uses time constructively, or otherwise engages in positive activities, the department may grant up to 20 days of incentive gaintime, which shall be credited and applied monthly.
In 1996, the Attorney General issued an opinion concluding that the department could exercise its "discretion" under the statute by adopting a rule that prohibited certain classes of inmates from receiving incentive gain-time. Op. Att'y Gen. Fla. 96-22 (1996). Based on this opinion, the department amended rule 33-11.0065, effective April 21, 1996, to read in pertinent part as follows:
(1) Ineligibility.
(a) No inmate shall receive or accumulate incentive gain time:
. . . .
6. If convicted of any of the following offenses committed before October 1, 1995 and has 85% or less of any sentence remaining to be served. The provisions of (1)(a)6. shall also apply to work, extra and constructive gain time for inmates convicted of offenses committed between July 1, 1978 and June 14, 1983. The provisions of (1)(a)6. shall not apply to educational gain time under s. 944.801, F.S., or to meritorious or educational achievement incentive gain time.
a. Is convicted or has been previously convicted, of committing or attempting to commit sexual battery or any of the following lewd or indecent assaults or acts: masturbating in public; exposing the sexual organs in a perverted manner; or nonconsensual handling or fondling of the sexual organs of another person;
b. Is convicted, or has been previously convicted, of committing or attempting to commit assault, aggravated assault, battery or aggravated battery, and a sex act was attempted or completed during commission of the offense;
c. Is convicted, or has been previously convicted, of committing or attempting to commit kidnapping;
d. Is convicted, or has been previously convicted, of committing or attempting to commit false imprisonment upon a child under the age of 13 and, in the course of committing the offense, the inmate committed aggravated child abuse; sexual battery against the child; or a lewd, lascivious, or indecent assault or act upon or in the presence of the child;
e. Is convicted, or has been previously convicted, of committing or attempting to commit murder in the first, second, or third degree under s. 782.04(1), (2), (3), or (4); or has ever been convicted of any degree of murder in another jurisdiction; or
f. Is convicted or has been previously convicted of committing or attempting to commit offenses under s. 827.03, 827.071(2) or (3) or 847.0145, Florida Statutes.
g. Is convicted or has been previously convicted of conspiracy or solicitation to commit any offense listed in a. through f. above.
(Amendment emphasized by underlining.) Through this amendment, the department has implemented the "85% rule" for certain classes of prisoners based on its discretionary authority under the statute. The department has determined that any defendant who has been convicted of any offense set forth in subsection (1)(a)6.a.-g. and who has 85% or less of any sentence remaining to be served, shall be ineligible to receive incentive gaintime. The department has advised the Court that more than 20,000 inmates are immediately impacted by this amendment to the rule. *112 Gwong alleges that the amendment violates the prohibition against ex post facto laws contained in article I, section 10, clause 1, of the United States Constitution.[3] Based on his assertions, he asks this Court to issue a writ of mandamus ordering the department to make incentive gain-time available to him as it existed at the time he committed his offense.
In evaluating whether a law violates the ex post facto clause, a two-prong test must be applied: (1) whether the law is retrospective in its effect; and (2) whether the law alters the definition of criminal conduct or increases the penalty by which a crime is punishable. California Dep't of Corrections v. Morales, ___ U.S. ___, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). In applying this test to the instant case, we are presented with nearly the identical situation we evaluated in Waldrup v. Bugger, 562 So.2d 687 (Fla.1990). In Waldrup, the prisoner had been sentenced for crimes committed in 1980 and 1982. In 1983, the legislature amended section 944.275 to decrease the possible award of incentive gain-time, which, in turn, had the effect of possibly increasing the prisoner's sentence. We first concluded that the change in the statute operated retrospectively because it applied to a large class of inmates whose offenses occurred before its effective date. Under the second prong, we concluded that the statute was ex post facto because it was more onerous than the law in effect on the date of the offense. See Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). This was true even though a prisoner had but a "mere expectancy" in the availability of incentive gain-time. 450 U.S. at 30, 101 S.Ct. at 965 (a law need not impair a "vested right" to violate the ex post facto prohibition; it need only make the punishment more onerous than the law in effect at the time the offense was committed). This is because "a prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." 450 U.S. at 32, 101 S.Ct. at 966. Like the situation in both Waldrup and Weaver, the instant rule amendment (1) applies to a class of inmates who committed their offenses before the amendment's effective date and (2) acts to enhance the measure of punishment because it eliminates the ability of an inmate to earn incentive gain-time credits.
In comparing the instant case to Waldrup and Weaver, we note that the United States Supreme Court has somewhat altered the second prong from how it was set forth in those cases. See Morales; Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). In Weaver, the Court concluded that a law violated the ex post facto clause if it retrospectively "disadvantaged" a prisoner. In Waldrup, we applied this same terminology. In Collins, however, the United States Supreme Court stated that a law is ex post facto if it punishes as a crime an act previously committed which was innocent when done, makes more burdensome the punishment for a crime after its commission, or deprives one charged with a crime of any defenses available according to the law at the time the act was committed. In Morales, the Court subsequently concluded that a law must do more than simply "disadvantage" an inmate to violate the ex post facto clause. The Court stated that a law violates the ex post facto clause if it (1) operates retrospectively and (2) alters the definition of criminal conduct or increases the penalty by which a crime is punishable as set forth in Collins. Morales, ___ U.S. at ___ n. 3, 115 S.Ct. at 1602 n. 3. The Court noted, however, that, in situations like those at issue in Weaver, the clause was violated because the new law enhanced the measure of punishment by altering the available gain-time. Id. at ___ _ ___, 115 S.Ct. at 1601-02. Likewise, the rule amendment in the instant case, as did the statute in Waldrup, retrospectively enhances the measure of punishment by altering the available gain-time.
*113 The department argues that Waldrup and Weaver are distinguishable because they both deal with changes in the law, whereas here we are confronted with a change in an administrative rule. The department maintains that the amendment is merely a policy decision, which is being instituted under the broad grant of discretion awarded to the department under the statute. According to the department, awards of incentive gaintime are totally within its discretion and nothing in the statute prohibits it from making distinctions among inmates. In fact, the department maintains that nothing in the statute mandates that it exercise its discretion at all. Thus, the department contends that the ex post facto clause is not implicated. In furtherance of its position, the department points to this Court's opinion in Waldrup, in which we stated:
Nothing in this opinion, however, shall be read as restricting the discretion accorded [the department] under the earlier incentive gain time statutes. This discretion remains intact. If [the department] withholds all or some of the incentive gain time available to Waldrup or similarly situated inmates under the earlier statutes, then [the department's] actions cannot be challenged unless they constitute an abuse of discretion.
562 So.2d at 692-93. The department also contends that the United States Supreme Court's recent opinion in Morales and the Eleventh Circuit Court of Appeal's opinions in Conlogue v. Shinbaum, 949 F.2d 378 (11th Cir.1991), and Paschal v. Wainwright, 738 F.2d 1173 (11th Cir.1984), provide that an administrative rule implemented in furtherance of a department's discretion does not implicate the ex post facto clause. We disagree.
First, the department misconstrues the above-quoted portion of our opinion in Waldrup. In that case, we were emphasizing that, although the amendments could not be retrospectively applied, the department could still properly deny gain-time to those inmates whom it found, in its discretion, did not qualify for gain-time because of unsatisfactory work or improper conduct. In no way did we intend for our language in that opinion to provide the department with the authority to completely refuse to exercise its discretion at all for certain categories of prisoners. As the Eleventh Circuit Court of Appeals stated in Raske v. Martinez, 876 F.2d 1496 (11th Cir.), cert. denied, 493 U.S. 993, 110 S.Ct. 543, 107 L.Ed.2d 540 (1989), the discretion afforded the department is not absolute. For example, a prisoner who has performed his work in an outstanding manner cannot legally be denied incentive gaintime for that work, despite the discretion afforded the department. Id. at 1499 n. 6. In other words, "the department is the judge of whether [the conditions set forth in the statute] have been met." Id. at 1499.
Further, the facts of the instant case are distinguishable from those in Paschal and Morales. In those cases, it was determined that the parole procedures could be amended because they merely altered the method to be followed in fixing a parole date. Here, the procedure for implementing the award of gaintime has not merely been altered; it has been changed to completely eliminate the ability of certain classes of inmates to receive gain-time even if they carry out their work in an outstanding manner as provided by the statute.
The rule is likewise distinguishable from the regulation at issue in Conlogue. In that case, an administrative regulation was promulgated setting forth the basis for determining a prisoner's eligibility for incentive good time, which is similar to the gain-time at issue. The regulation in effect at the time the inmate committed his crime provided that any inmate whose psychological or sociological profile contraindicated an early release back to society would not receive the gain-time. After the inmate was incarcerated, the following provision was added to the regulation: "Since criminal record is an important element of sociological profile, repeated convictions for violent crimes against persons may be a contraindication to award of [gain-time] status." 949 F.2d at 380. The Eleventh Circuit found that the amendment was properly adopted because it was merely a procedural amendment, which provided a more refined definition for the terms "psychological or sociological profile." In fact, *114 the Eleventh Circuit specifically distinguished the case from that in Weaver by finding that the regulation at issue did not involve a Weaver type regulation that drastically reduced the gain-time an inmate could earn. Conlogue, 949 F.2d at 381 n. 9.
By amending the rule, the department seeks to do what the legislature cannot even though the department itself is created by the legislature and acts in a quasi-legislative capacity. As the department conceded at oral argument, if the legislature had passed a statute retrospectively eliminating Gwong's eligibility for incentive gain-time, the statute would violate the ex post facto clause. Simply because the amendment is an administrative regulation rather than a law does not alter the application of the ex post facto clause. Such an argument fails to "acknowledge that it is the effect, not the form, of the law that determines whether it is ex post facto." Weaver, 450 U.S. at 31, 101 S.Ct. at 965.
Given that the amendment (1) applies to a class of inmates who committed their offenses before the amendment's effective date and (2) acts to enhance the measure of punishment because it eliminates the ability of certain inmates to earn incentive gaintime credits, we are compelled to conclude that it violates the ex post facto prohibition.
Accordingly, for the foregoing reasons, we grant Gwong's petition, holding that upon this opinion's becoming final, the department shall be barred from applying the amendment to inmates convicted of offenses occurring before its effective date. Consistent with this opinion, we also disapprove Attorney General Opinion 96-22. Because we trust that the department will fully comply with the dictates of this opinion, we withhold issuance of the writ.
It is so ordered.
KOGAN, C.J., and SHAW, GRIMES, HARDING and ANSTEAD, JJ., concur.
WELLS, J., concurs in result only.

ON REHEARING
We deny rehearing.
In our 1979 decision in Harris v. Wainwright, 376 So.2d 855 (Fla.1979), we expressly adopted the view asserted by the State of Florida and rejected a prisoner's claim that the ex post facto clause prohibited the State from retroactively applying a more restrictive gain-time statute even though the statute had the effect of lengthening the defendant's sentence. In Harris, consistent with the State's position, we held that gain-time statutes were a matter of legislative or executive grace and that the ex post facto clause was inapplicable. On the same date that we issued our opinion in Harris, we summarily denied the petition for writ of habeas corpus filed in Weaver v. Graham, 376 So.2d 855 (Fla.1979), relying on our decision in Harris.
The United States Supreme Court then unanimously reversed our decision in Harris in Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). It rejected the grace theory and held that changes, such as those at issue, in incentive gain-time statutes result in an increase in the inmate's penalty, and, consequently, violate the ex post facto clause. While the United States Supreme Court did somewhat alter the standard for reviewing ex post facto cases in California Department of Corrections v. Morales, ___ U.S. ___, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), the Court specifically upheld the result it reached in Weaver. It is very clear that the holding of the United States Supreme Court in Weaver is still the law of this land, whether we like it or not. We can neither ignore nor avoid the express dictates of the United States Supreme Court in its holding in Weaver.
In the State's petition for rehearing, it requests that we issue an order indefinitely staying the finality of our opinion in this cause pending review by the United States Supreme Court, on the basis that the Court has granted review in Lynce v. Mathis, ___ U.S. ___, 116 S.Ct. 1671, 134 L.Ed.2d 775 (1996) (order granting certiorari). According to the State, the State is asking the United States Supreme Court in Lynce to revisit and recede from its decision in Weaver. Granting the requested stay would allow the Department of Corrections to continue implementing the administrative rule that, *115 under the United States Supreme Court's decision in Weaver, is clearly unconstitutional. In examining the State's request, it is important to note that the type of gain time being reviewed in Lynce is significantly different from that at issue here. In Lynce, the issue involves the ex post facto clause as it applies to administrative gain time and provisional credits. The decision in the instant cause involves incentive gain time. These are two distinct types of gain time. We have both explained the different types of gain time and held that administrative gain time and provisional credits are awarded solely for the administrative convenience of the Department of Corrections to alleviate prison overcrowding and are in no way tied to the overall length of an inmate's sentence; consequently, the ex post facto clause does not apply. Dugger v. Grant, 610 So.2d 428 (Fla. 1992); Dugger v. Rodrick, 584 So.2d 2 (Fla. 1991), cert. denied, 502 U.S. 1037, 112 S.Ct. 886, 116 L.Ed.2d 790 (1992); and Blankenship v. Dugger, 521 So.2d 1097 (Fla.1988). Incentive or earned gain-time credits, on the other hand, involve quantifiable elements of the length of a prisoner's sentence and are the type of gain time involved in Weaver.
The United States Supreme Court's decision in Weaver is presently the law and, consequently, we are compelled to deny the State's request for an indefinite stay pending that Court's decision in Lynce. Because we trust that the department will fully comply with the dictates of this opinion, we withhold issuance of the writ.
It is so ordered.
KOGAN, C.J., and SHAW, GRIMES and WELLS, JJ., concur.
HARDING and ANSTEAD, JJ., concur in result.
No motion for rehearing will be allowed.
NOTES
[1] Inmates convicted of offenses committed between July 1, 1978, and June 14, 1983, are eligible to receive work and extra gain-time under the prior provisions of section 944.275(2)(b) and (3)(a), Florida Statutes (1979). In 1983, the legislature simplified the gain-time statute and replaced the terms "work" and "extra" gain-time with the term "incentive" gain-time. § 944.275(4)(b), Fla. Stat. (1983). In this opinion, we collectively refer to all three types of gain-time as incentive gain-time.
[2] Section 944.275 was amended in 1993 and 1995 to alter the amount of gain-time the department is authorized to award. Those amendments are not applicable to Gwong given that his crime was committed before the effective dates of those amendment;;. See Waldrup v. Dugger, 562 So.2d 687 (Fla. 1990).
[3] Article I, section 10, clause 1 provides:

No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.
(Emphasis added.)