686 So.2d 1337 (1996)
Russell CALAMIA, Petitioner,
v.
Harry K. SINGLETARY, Jr., etc., Respondent.
Jeffrey Lynn HOCK, Petitioner,
v.
Harry K. SINGLETARY, Jr., Respondent.
Nos. 84088, 86182.
Supreme Court of Florida.
December 19, 1996.
Wendy M. Edmonds and R. Mitchell Prugh of Middleton, Prugh & Anderson, P.A., Melrose, on behalf of Russell Calamia; and John C. Schaible, Florida Institutional Legal Services, Inc., Gainesville, on behalf of Jeffrey Lynn Hock, for Petitioners.
Susan A. Maher, Deputy General Counsel, Department of Corrections, Tallahassee, for Respondent.
*1338 GRIMES, Justice.
Russell Calamia petitions this Court for a writ of habeas corpus; Jeffrey Lynn Hock petitions this Court for a writ of mandamus. We have jurisdiction. Art. V, § 3(b)(8), (9), Fla. Const. Because their cases present substantially the same questions, they were consolidated for our consideration.
Petitioners, both inmates, allege that the interpretation of sections 944.277, Florida Statutes (Supp.1992), and 944.278, Florida Statutes (1993), which deprived them of both previously awarded provisional credits and the possibility of future awards of such credits, constitutes an ex post facto violation in contravention of the United States and Florida Constitutions.
Calamia's petition for writ of habeas corpus was filed with this Court on July 27, 1994. This Court denied the petition. Calamia v. Singletary, 645 So.2d 450 (Fla.1994). The United States Supreme Court vacated the denial of the petition and remanded it here for reconsideration in light of California Department of Corrections v. Morales, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). Calamia v. Singletary, ___ U.S. ___, 115 S.Ct. 1995, 131 L.Ed.2d 998 (1995).
Calamia was charged with first-degree murder for a homicide committed January 3, 1986. At trial, he agreed to plead nolo contendere to the reduced charge of second-degree murder. On January 14, 1988, he was sentenced to twenty years in prison, including a three-year minimum mandatory sentence for possession of a firearm.
Hock was charged with first-degree murder for a homicide committed on October 1, 1988. He was found guilty of second-degree murder. On May 11, 1990, Hock was sentenced to thirty-two years in prison followed by ten years' probation.
In 1987, the legislature enacted section 944.276, Florida Statutes (1987), which provided that when the inmate population reached 98% of lawful capacity, the Secretary of the Department of Corrections had the authority to award up to sixty days' administrative gain time to all inmates who were earning incentive gain time. Section 944.276 was repealed in 1988 and replaced by section 944.277, Florida Statutes (Supp.1988), which provided that when the inmate population reached 97.5% of lawful capacity, the Secretary could grant up to sixty days of provisional credits[1] to all inmates earning incentive gain time.[2] Ch. 88-122, §§ 5 and 6, at 535-37, Laws of Fla.
As a consequence of prison overcrowding, the Secretary awarded Calamia provisional credits of 420 days and Hock provisional credits of 360 days. However, effective January 1, 1990, section 944.277 was amended to exclude those convicted of murder in any degree from receiving credits.[3] Because both Calamia and Hock had been convicted of second-degree murder, their provisional credits were cancelled.[4]
The petitioners' ex post facto arguments have been considered by this Court in previous decisions. In Blankenship v. Dugger, 521 So.2d 1097, 1098-99 (Fla.1988), this Court rejected an argument that section 944.276, Florida Statutes (1987), which cancelled the eligibility of prisoners who had been convicted of certain serious felonies for administrative gain time, was ex post facto as applied to prisoners whose crimes were committed *1339 before the enactment of section 944.276. We explained that unlike laws that awarded time off for a prisoner's good behavior, the administrative gain-time statutes made no guarantee that a prisoner would obtain the benefit of gain time because administrative gain time was awarded solely for the administrative convenience of the Department of Corrections. Blankenship, 521 So.2d at 1099.
In Dugger v. Rodrick, 584 So.2d 2 (Fla. 1991), cert. denied, 502 U.S. 1037, 112 S.Ct. 886, 116 L.Ed.2d 790 (1992), we quashed the district court of appeal's decision directing the trial court to grant a prisoner's petition for writ of mandamus which asserted that the denial of provisional credits under section 944.277, Florida Statutes (Supp.1988), constituted an ex post facto application of the law. We differentiated provisional credits from basic gain time and incentive gain time because these awards are quantifiable elements of the length of a prisoner's sentence.[5] We explained:
[T]he eligibility and receipt by a prisoner of provisional credits for prison overcrowding, regardless of what they are called, is in no way tied to overall length of sentence. The need for and application of such awards are contingent upon many outside variables that contribute to prison overcrowding. There is no relationship to the original penalty assigned to the crime at the time it was committed nor to the ultimate punishment meted out. The sole purpose of the early-release statutes is to provide a temporary mechanism to alleviate the administrative crisis created by prison overcrowding while continuing to protect the public from violent offenders. The statutes, procedural in nature, are not directed toward the traditional purposes of punishment.
Rodrick, 584 So.2d at 4. We reiterated this position in Dugger v. Grant, 610 So.2d 428, 430 (Fla.1992), by pointing out once again that the administrative gain-time statutes were enacted not for the benefit of prisoners but merely as a procedure utilized by the Department of Corrections to alleviate prison overcrowding.
Likewise, in Griffin v. Singletary, 638 So.2d 500 (Fla.1994), we upheld the cancellation of a prisoner's provisional credit based on the authority of opinion 92-96 of the Florida Attorney General and section 944.277(1)(i), Florida Statutes (Supp.1992). At the outset we explained that the administrative gain time specified in the earlier statutes was the same as the provisional credit described in later legislation[6] and that the sole purpose of both forms was to reduce prison overcrowding when the correctional system reached a specified percentage of its lawful capacity. Griffin, 638 So.2d at 501. We held that the ex post facto clauses of both the federal and state constitutions did not prohibit the legislature from passing, nor the Department of Corrections from enforcing, legislation that limited or eliminated the availability of this species of credit or gain time. Id. In response to the contention that the Department of Corrections could not cancel a prisoner's credits or gain time once it was awarded, we stated:
[W]e believe the state has identified a legally sufficient reason to revoke provisional credits/administrative gain time for inmates such as Griffin. Revocation for present purposes has been confined to those inmates convicted of especially serious crimes, including murder, certain offenses against children, and certain sexual offenses. In Griffin's case, the crime was second degree murder. We believe the state has a more than sufficient reason because of its need to protect society in general from certain categories of felons.
Given the inherently contingent nature of provisional credits and administrative *1340 gain time and the strong societal interest, we hold that the courts may not go behind the state's decision to cancel the provisional credits and administrative gain time of this inmate. This conclusion is only reinforced by the fact that the instant cancellation was pursuant to newly enacted legislation that will be applicable to all similarly situated inmates. Absent this legislative authorization, DOC might have been required to initiate proceedings to cancel the credits/gain time.
Id. at 501-02.
The petition for certiorari in Rodrick was denied by the United States Supreme Court. Nothing has changed since our decisions in Blankenship, Grant, and Griffin, or since the United States Supreme Court denied certiorari in Rodrick, except that the United States Supreme Court remanded the instant cases for reconsideration in light of its recent decision in Morales. Calamia, ___ U.S. at ___, 115 S.Ct. at 1996. Ironically, the Morales Court rejected a prisoner's contention that a reduction in the frequency of hearings to determine eligibility for parole violated the Ex Post Facto Clause. ___ U.S. at ___, U.S. ___, 115 S.Ct. at 1601-05. The Morales Court reiterated the same principles and relied upon the same cases that we had considered in Blankenship, Rodrick, Grant, and Griffin. In fact, the Morales analysis of the Ex Post Facto Clause supports our prior holdings:
Our opinions in Lindsey, Weaver, and Miller suggested that enhancements to the measure of criminal punishment fall within the ex post facto prohibition because they operate to the "disadvantage" of covered offenders. See Lindsey [v. Washington], 301 U.S., [397] at 401, 57 S.Ct., [797] at 799 [81 L.Ed. 1182 (1937)]; Weaver [v. Graham], 450 U.S., [24] at 29, 101 S.Ct., [960] at 964 [67 L.Ed.2d 17 (1981)]; Miller [v. Florida], 482 U.S., [423] at 433, 107 S.Ct., [2446] at 2452-53 [96 L.Ed.2d 351 (1987)]. But that language was unnecessary to the results in those cases and is inconsistent with the framework developed in Collins v. Youngblood, 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990). After Collins, the focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of "disadvantage," nor, as the dissent seems to suggest, on whether an amendment affects a prisoner's "opportunity to take advantage of provisions for early release," see post, at 1607, but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.
Morales, ___ U.S. at ___ n. 3, 115 S.Ct. at 1602 n. 3. Thus, the United States Supreme Court has receded from its earlier position that enhancements to the measure of criminal punishment which operate to "disadvantage" applicable offenders fall within the ex post facto prohibition of the constitution. As the Court now explains, the Ex Post Facto Clause only comes into play when a legislative change "alters the definition of criminal conduct or increases the penalty by which a crime is punishable." Id. Clearly, the cancellation of provisional credits has no relationship to the penalties for the crimes which petitioners committed.
The lower federal courts also agree with our decisions holding that administrative gaintime and provisional credit statutes are administrative and procedural in nature and not subject to ex post facto proscriptions. For example, the recent decision in Magnotti v. Singletary, No. 93-8554-CIV-MORENO (S.D.Fla. Mar. 24, 1994) (unpublished order adopting the report of the magistrate judge dated March 21, 1994), cited with approval our decision in Griffin and adopted the report of the magistrate judge which stated that "[t]he provisional credits in § 944.277 were contemplated not as a prisoner entitlement but merely as an escape valve which would be triggered only by the need to alleviate overcrowding in the state prison system." Magistrate judge's report at 6. Magnotti was affirmed in an unpublished opinion by the Eleventh Circuit Court of Appeals. See Magnotti v. Singletary, 67 F.3d 314 (11th Cir.1995). Similarly, in Eastman v. Singletary, No. 94-869-CIV-DLG (S.D.Fla.1994) *1341 (unpublished order adopting the report of the magistrate judge dated October 20, 1994), the district court adopted the report of the magistrate judge who reasoned that the retroactive denial of administrative gain time and provisional credits by the adoption of section 944.278, Florida Statutes (1993), did not violate the Ex Post Facto Clause of the United States Constitution. In affirming this holding, the Eleventh Circuit Court of Appeals approved the reasoning of the magistrate judge in an unpublished opinion. See Eastman v. Singletary, 70 F.3d 1285 (11th Cir.1995) (table report of unpublished opinion affirming reasoning of magistrate judge).
In another case addressing a prior petition by Hock, one of the prisoners in this case, the Eleventh Circuit Court of Appeals stated:
[T]he retroactive application of control release does not actually disadvantage the petitioner by reducing his opportunity to shorten his time in prison. Because control release is based on an arbitrary and unpredictable determinant, the prison population level, an inmate has no reasonable expectation at the time he is sentenced that the prison population will reach the specified triggering level and that his incarceration will therefore be reduced.
Hock v. Singletary, 41 F.3d 1470, 1472-73 (11th Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 715, 133 L.Ed.2d 668 (1996). In addition, the State posits that in a number of other cases, federal district courts have held that Florida's administrative gain-time and provisional credit statutes do not run afoul of ex post facto proscriptions. See, e.g., Williams v. Dugger, No. 90-602-CIV-T-3A98(A) (M.D. Fla. June 7, 1991); Stafford v. Dugger, No. 89-295-CIV-J-16 (M.D.Fla. July 10, 1990); Aman v. Martinez, No. 88-50124-RV (N.D.Fla. May 8, 1989); Manzanero v. Dugger, No. 88-6076-CIV-SCOTT (S.D.Fla. Sept. 29, 1988); Petrone v. Dugger, No. 88-12041-CIVATKINS (S.D.Fla. Aug. 29, 1988), aff'd, 886 F.2d 1323 (11th Cir.1989).
Further, in Monroe v. Florida Legislature, 641 So.2d 863 (Fla.1994), we denied the prisoner's petition on the authority of our decision in Griffin. Monroe, 641 So.2d at 864. Griffin presented the same issues that are being argued by the prisoners in the instant cases. Subsequent to its remand of the instant cases, the United States Supreme Court denied the petition for certiorari to review our decision in Monroe. Monroe v. Florida Legislature, ___ U.S. ___, 115 S.Ct. 2559, 132 L.Ed.2d 812 (1995). Thus, it is clear that the United States Supreme Court has not manifested any disapproval of our decisions holding that the retroactive cancellation of administrative gain time and provisional credits does not violate the Ex Post Facto Clause. To now reverse course and reinstate the administrative or provisional gain time would provide an unearned and unwarranted windfall to thousands of prisoners.
The petitioners' remaining arguments are without merit. We deny the petitions.[7]
It is so ordered.
KOGAN, C.J., and OVERTON and WELLS, JJ., concur.
HARDING, J., dissents with an opinion, in which SHAW and ANSTEAD, JJ., concur.
HARDING, Justice, dissenting.
I respectfully dissent. I would hold that the retrospective application of section 944.277, Florida Statutes (Supp.1992), and section 944.278, Florida Statutes (1993), constitutes a violation of the ex post facto clauses of the United States and Florida Constitutions.
I am aware that by providing administrative gain-time to permit the early release of *1342 prisoners, the Legislature was trying to remedy serious overcrowding in our prisons. Recently, in an effort to ensure that the problems created by administrative gain-time will not recur, the Legislature has provided funding to increase the number of prison beds. Additionally, the Department of Corrections has passed an administrative rule which will require prisoners to serve at least eighty-five percent of their sentences.[8] I view both of these as laudable actions. In fact, I probably join with the majority of the citizens of this state in wondering why a prisoner should not be required to serve all of the sentence imposed by a court. Still, I must recognize that gain-time statutes of one form or another have been the law in Florida, and must therefore be enforced.
This Court has already recognized this reality in Justice Overton's well-reasoned analysis in Gwong v. Singletary, 683 So.2d 109 (Fla.1996), where the Court unanimously held that the retroactive taking of the ability to earn incentive gain-time constituted an ex post facto violation. In Gwong, we emphasized that even the "mere expectancy" of the availability of incentive gain-time implicated the Ex Post Facto Clause. Gwong, 683 So.2d at 110-11. I do not believe that this analysis fails here simply because we call one form of gain-time "incentive" and the other "administrative" or "provisional."
The Supreme Court directed us to reexamine our treatment of the provisional-credit issue in light of California Department of Corrections v. Morales, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). After analyzing that caseand the cases it cites for supportI would now conclude that our determination in Blankenship, Rodrick, and Griffin that provisional credits did not implicate the Ex Post Facto Clause because they were purely procedural was incorrect.[9]
This conclusion squares with the Supreme Court's decision in Morales. There, the Supreme Court found that the legislation at issue (concerning decreasing the frequency of parole hearings) did not violate the Ex Post Facto Clause because it created only an "attenuated possibility" of increasing the measure of punishment for the crimes covered, relying in part on the fact that "the amendment applie[d] only to a class of prisoners for whom the likelihood of release on parole is quite remote." Morales, 514 U.S. at ___, 115 S.Ct. at 1603. Even with decreased frequency of parole hearings, the Supreme Court found that "there is no reason to think that [postponement of a hearing] would extend any prisoner's actual period of confinement." Morales, 514 U.S. at ___, 115 S.Ct. at 1605.
Here, there is every reason to think that revoking already-awarded provisional credits will extend prisoners' actual periods of confinement. The risk of such increase is neither tenuous nor speculative; it is, rather, direct and definite. The Supreme Court has already decided that the risk inherent in revocation of gain-time is substantial: "It is plainly to the substantial disadvantage of [inmates] to be deprived of all opportunity to receive a sentence which would give them freedom from custody and control prior to the expiration of the [term sentenced]." Lindsey v. Washington, 301 U.S. 397, 401-02, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937). I believe this concern holds just as true for provisional credits as for incentive and basic gain-time awards. Before the application of the statutes, inmates had been awarded credits which would give them freedom from *1343 custody prior to the expiration of their sentenced term. But when the DOC cancelled their credits and their provisional release dates, that opportunity was retroactively revoked.
Article I, section 10 of the United States Constitution prohibits the states from passing any ex post facto law; this prohibition is echoed in article I, section 10 of Florida's Constitution. The clause is implicated whenever a "law changes the legal consequences of acts completed before its effective date." Weaver v. Graham, 450 U.S. 24, 31, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981). The United States Supreme Court has expressed the concern underlying the ex post facto prohibition as "lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Weaver, 450 U.S. at 30, 101 S.Ct. at 965.
Revoking the credits at issueand the possibility to continue to earn themconstitutes a textbook ex post facto violation. For a law to violate the clause, "two critical elements must be present: first, the law `must be retrospective, that is, it must apply to events occurring before its enactment;' and second, `it must disadvantage the offender affected by it.'" Miller v. Florida, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (quoting Weaver, 450 U.S. at 29, 101 S.Ct. at 964-65). Morales makes it clear that an "ambiguous" disadvantage is not sufficient; it is important to look at whether a change in the law "alters the definition of criminal conduct or increases the penalty by which a crime is punishable." Morales, 514 U.S. at ___, n. 3, 115 S.Ct. at 1602, n. 3. It is important to note that "a law need not impair a `vested right' to violate the ex post facto prohibition.... The presence or absence of an affirmative, enforceable right is not relevant... to the ex post facto prohibition...." Weaver, 450 U.S. at 29-30, 101 S.Ct. at 964-65 (citations omitted).
Clearly, the sections at issue here apply retrospectively: section 944.277 (Supp. 1992)through interpretation by the DOC and section 944.278through its plain languagenot only changed the policies on awarding provisional credits but also applied the new policies retroactively to all inmates still under the DOC's control. Thus, both of the statutes apply to inmates whose offenses occurred before the enactment of the two statutes.
It is equally apparent that the sections "disadvantage" petitioners, and others in their situation, and increase the penalty by which their crimes are punished. In plainest terms, the sections resulted in a recalculation of release dates which lengthened the amount of time affected prisoners would spend incarcerated. Accordingly, I cannot accept the majority's position that the statutes are purely procedural in nature and thus do not even trigger the clause.
The majority relies in part on our decision in Dugger v. Rodrick, 584 So.2d 2 (Fla.1991), for support. In Rodrick, we looked at a similar challenge to the provisional credit scheme. At the time Rodrick was sentenced, he was eligible for provisional credits under section 944.276. When 944.277 was enacted, however, it precluded the award of credits to those convicted of certain offenses. Rodrick fell within the exclusion, and the DOC refused to award him credits. He argued that the application of section 944.277 to him constituted an ex post facto violation. We rejected his claim, holding that provisional credit awards were "a procedure utilized by the Department of Corrections to reduce prison population and ... not a substantive matter of punishment or reward," Rodrick, 584 So.2d at 4, and therefore not subject to ex post facto restrictions.
We based our decision in Rodrick largely on our earlier decision in Blankenship v. Dugger, 521 So.2d 1097 (Fla.1988). There, the defendant was eligible at sentencing for treatment under section 944.598, Florida Statutes (1983), which would have made him eligible for any administrative gain-time awarded under that section. The provisions of the statute were never implemented, and subsequently section 944.276 was applied to *1344 him, which meant that his conviction for sexual battery precluded any awards under that section. We determined that there was no ex post facto violation because no gain-time had been awarded to any inmate under section 944.598, so no rights could have been created under that section.
We explicitly relied on Rodrick in Griffin v. Singletary, 638 So.2d 500 (Fla.1994), where we wrote "[w]e elsewhere have held that any due process interest in the provisional credit is far less, due to its peculiarly contingent nature and the fact that the state has great discretion in revoking or limiting provisional credits." Griffin, 638 So.2d at 501 (citing Rodrick). Although our ultimate holding in Griffin was that there was no due process violation involved in cancelling administrative gain-time, we echoed our position from Rodrick that there was also no ex post facto violation. Griffin, 638 So.2d at 501.
While it is true that changes in legislation which affect only procedural matters are free from the application of the clause, see, e.g., Morales, 514 U.S. at ___, 115 S.Ct. at 1602; Dobbert v. Florida, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977); Hopt v. Utah, 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884), the Supreme Court has held that "a change in the law that alters a substantial right can be ex post facto `even if the statute takes a seemingly procedural form.'" Miller, 482 U.S. at 433, 107 S.Ct. at 2453 (quoting Weaver, 450 U.S. at 29, n. 12, 101 S.Ct. at 964, n. 12).
The Supreme Court has clearly held that a law does not have to affect something "earned" to violate the Ex Post Facto Clause: "[E]ven if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense." Weaver, 450 U.S. at 30-31, 101 S.Ct. at 965. It is irrelevant whether or not gain-time was technically part of a defendant's sentence, because it "in fact is one determinant of [a defendant's] prison termand ... [the] effective sentence is altered once this determinant is changed." Weaver, 450 U.S. at 32, 101 S.Ct. at 966. See also Lindsey v. Washington, 301 U.S. 397, 401-02, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937). Further, the Supreme Court recognized that "a prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." Weaver, 450 U.S. at 32, 101 S.Ct. at 966. See also Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974); Warden v. Marrero, 417 U.S. 653, 658, 94 S.Ct. 2532, 2535-36, 41 L.Ed.2d 383 (1974).
I see no practical difference, in terms of analysis for ex post facto purposes, between revoking awards of incentive gain-time and provisional credits. In Waldrup v. Dugger, 562 So.2d 687 (Fla.1990), this Court considered Florida's incentive gain-time provisions. There we wrote: "Although DOC typically granted the basic gain-time awards to every inmate not guilty of any infraction, the statutory language reveals that DOC possessed considerable discretion in determining what constituted `satisfactory and acceptable' work. Such awards thus were not `automatic'...." Waldrup, 562 So.2d at 689. We went on to question whether "mandatory" gain-time has ever actually existed in Florida. Waldrup, 562 So.2d at 692. There, we ultimately held that retrospectively applying narrower provisions governing the award of incentive gain-time constituted an ex post facto violation. Waldrup, 562 So.2d at 692.
Even though the credits here may be called "administrative," they factored into inmates' sentences exactly as incentive and basic gain-time did. The statutes authorizing the credits called for calculation of a release date based on the credits, and established a scheme for the DOC to follow in releasing inmates from incarceration. Clearly, provisional credits affect substantive rights.
The majority indicates that reversing course and reinstating the gain-time lost (which would, actually, be re-reversing *1345 course, back to the original interpretation of the statutes) would grant "unearned" relief to thousands of prisoners. While I would not gladly lobby for the reduction of prison time to be served by convicted offenders, I firmly believe that our guiding standard is, as always, the law that stands before us and not the results which might follow. This Court does not grant or deny relief based on the impact a decision might have; to do so is to be seduced by the Red Queen's illogical cries of "Sentence firstverdict afterwards."[10]
I would hold that the provisions of sections 944.277 (Supp.1992) and 944.278 can only be applied prospectively, to those offenders whose crimes occurred on or after their effective dates. I would direct the Secretary to restore those credits which were revoked.
Our words in Waldrupdealing with the incentive gain-time statuteare equally germane to my interpretation of the issue now before us:
Nothing in this opinion ... shall be read as restricting the discretion accorded DOC under the earlier incentive gain-time statutes. This discretion remains intact. If DOC withholds all or some of the incentive gain-time available [to eligible inmates], then DOC's actions cannot be challenged unless they constitute an abuse of discretion. This however, is not an issue for the present Court to decide.
Waldrup, 562 So.2d at 692-93. Therefore, although the DOC would be required to continue to apply the statutes in effect when Calamia, Hock, and similarly situated inmates committed their offenses, those statutes clearly say that if overcrowding conditions exist, the DOC may award provisional credits to all eligible inmates. Thus, in light of this discretion, the DOC would be under no obligation to invoke the statutes to award provisional credits for any periods of time other than those for which it had already granted credits. Because the DOC did invoke the statutes for certain periods of time, it should now be directed to restore the credits it awarded.
In light of the above I am compelled to dissent.
SHAW and ANSTEAD, JJ., concur.
NOTES
[1] At that time, both sections 944.276 and 944.277 excluded certain classes of persons from receiving provisional credits, but neither Calamia nor Hock fell within these exclusions.
[2] "Administrative gain time" and "provisional credits" are synonymous. See Griffin v. Singletary, 638 So.2d 500, 501 (Fla.1994) ("[L]egislative history discloses that the legislature in 1988 merely changed the name of `administrative gain time' to `provisional credits'....").
[3] Ch. 89-100, § 4, at 256, Laws of Fla.
[4] Thereafter, in 1993 the legislature repealed section 944.277 and enacted section 944.278, which canceled all previously granted provisional credits for those in custody at that time. Ch. 93-406, § 32, at 2966, and § 35, at 2967, Laws of Fla.
[5] We have maintained this distinction in Gwong v. Singletary, 683 So.2d 109 (Fla.1996), in which we recently held that inmates could not be retroactively deprived of the right to earn incentive gain time.
[6] The term "provisional" itself bespeaks the contingent nature of the credit.
[7] There is another reason why Calamia's petition would have to be denied. It is clear that any ex post facto analysis relates to the date of the crime rather than the conviction. Section 944.276, the statute under which Calamia makes his claim, was not enacted until after he committed his crime. The earlier prison overcrowding statute, section 944.598, Florida Statutes (1985), which was in effect at the time of Calamia's crimes, was never implemented. Therefore, even under the analysis of the dissenting opinion, Calamia would not be entitled to relief.
[8] Florida Administrative Code Rule 33-11.0065 (1996).
[9] The majority urges that the Supreme Court's denial of certiorari in Monroe v. Florida Legislature, 641 So.2d 863 (Fla.1994), cert. denied ___ U.S. ___, 115 S.Ct. 2559, 132 L.Ed.2d 812 (1995), somehow manifests approval of our dismissal of these same issues. As Justice Holmes wrote in 1923, "denial of a writ of certiorari imports no expression of opinion upon the merits of the case." United States v. Carver, 260 U.S. 482, 490, 43 S.Ct. 181, 182, 67 L.Ed. 361 (1923). Additionally, I would note that the Supreme Court has recently granted a petition for certiorari in Lynce v. Mathis, ___ U.S. ___, 116 S.Ct. 1671, 134 L.Ed.2d 775 (1996), where the Eleventh Circuit Court of Appeals declined to review the district court's denial of a habeas petition alleging the same provisions as those at issue in the instant case violate the Ex Post Facto Clause.
[10] Lewis Carroll, Alice's Adventures in Wonderland, Chapter 12.