STEVENSON, Judge,
dissenting.
Because the 1994 amendments substantially increase the likelihood that adult sanctions will be imposed, I dissent and would conclude that applying the amended statute runs afoul of the constitutional protection against ex post facto laws. To the extent that the holding in Lutz v. State, 664 So.2d 1060 (Fla. 4th DCA 1995), differs, I would recede from that opinion.
THE 1994 AMENDMENTS TO SECTION 39.059
Sections 39.059(7)(e)1-6, Florida Statutes (1993), required the court to consider, at the *638 sentencing hearing, each of the six statutorily stated criteria before deciding whether to sentence a child as an adult or a juvenile. A contemporaneous written order was required, stating specific findings and the criteria applied. § 39.059(7)(d), Fla.Stat. (1998). This order could not consist of mere conclu-sory language and could not be substantively different from the orally stated findings and reasons. Id. As explained in Troutman v. State, 630 So.2d 528 (Fla.1993), the order had to be prepared the same day but could be filed the next day.
The amended statute, effective October 1, 1994, no longer requires the trial court to enter a written order stating the basis for the court’s imposition of adult sanctions, and there is a presumption that the choice of adult sanctions is appropriate. Compare §§ 39.059(7)(d), Fla.Stat. (1993) with (Supp. 1994). In addition, the amended statute adds two new criteria to the previous six: (1) consideration of whether juvenile services are immediately available and (2) consideration of whether youthful offender or adult sanctions would provide more appropriate punishment and deterrence. See §§ 39.059(7)(e)7 and 8, Fla.Stat. (Supp.1994).
APPLICABLE LAW
In Gwong v. Singletary, 683 So.2d 109 (Fla.1996), the court stated the most recent formulation of the ex post facto analysis:
... a law violates the ex post facto clause if it (1) operates retrospectively and (2) alters the definition of criminal conduct or increases the penalty by which a crime is punishable as set forth in Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990).
It is true that a mere “disadvantage” to a defendant no longer amounts to an ex post facto violation. Collins, 497 U.S. at 50, 110 S.Ct. at 2723; Gwong, 683 So.2d at 112. Instead, the retrospective application of the law must alter the definition of criminal conduct or increase the penalty by which a crime is punishable. Id. Admittedly, in deciding whether the 1994 amendments result in an increased penalty, juvenile defendants are not certain to suffer the increased penalty of adult sanctions under the amendments. However, such certainty is not an essential ingredient of an ex post facto violation; rather, “[i]n evaluating the constitutionality of [the retrospective application of a law], we must determine whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes.” California Dep’t of Corrections v. Morales, 514 U.S. 499, -, 115 S.Ct. 1597, 1603, 131 L.Ed.2d 588 (1995)(emphasis added). Thus, the relevant inquiry is whether the 1994 amendments present an increased risk of the imposition of adult sanctions over that which existed under the prior statutory provisions.
A SUFFICIENT RISK OF ADULT SANCTIONS
The 1994 amendments are the latest in a long line of amendments to the Juvenile Justice Act, spanning the last 45 years, that expand the treatment of juveniles as adults. See Cynthia R. Noon, Comment, “Waiving” Goodbye to Juvenile Defendants, Getting Smart v. Getting Tough, 49 U. Miami L.Rev. 431, 438 (1994).
The desire for change has led the Florida Juvenile Justice System to go full circle, from prosecution of juveniles as adults in criminal courts, through adjudication and sentencing in a separate noneriminal system, and finally to the present practice of prosecuting and sentencing some juveniles in the adult system. Considering the mechanisms that are currently available under the Florida Juvenile Justice Act to prosecute and sentence juveniles as adults ... it may be argued that, although the age of majority is eighteen, Florida has structured its system so that fourteen-year-old juveniles are treated as adults. Consequently, the rehabilitative juvenile justice system has gradually disappeared.
Id. at 433.
Discussing specifically the 1994 amend[1] ments, another commentator has explained that the new presumption of correctness and the abandonment of the required written justification for adult sanctions mean that “summary appellate affirmance is [now] easier.” Michael J. Dale, Juvenile Law: 1995 Survey of Florida Law, 20 Nova L.Rev. 191, 202 (1995). Considering the substantial number of adult sentences reversed as a result of the *639 “recurring problem” of trial courts failing to comply with the now-repealed writing requirement, id. at 200-01,[2] it seems inevitable that the risk of any particular juvenile ultimately receiving an adult punishment has been increased by the abandonment of the mandatory written explanation.
The risk of adult sentencing is increased further by the incorporation of the availability of juvenile services as a consideration. The legislature itself has recognized the deficiency of juvenile treatment programs. See, e.g., § 39.002(5)(a), Fla.Stat. (1995)(reeogniz-ing the “inadequate number of beds for serious or habitual offenders” and the “inadequate number of community and residential programs”). Our supreme court has also recognized the deficiencies of the juvenile justice system in this regard:
The lack of adequate placement alternatives or mental and physical health services for children needing them is a recurring daily problem in our juvenile system. Even though the legislature has recognized the critical need to provide appropriate placements or services for such children, these services have not been made available. See Commission on Juvenile Justice, 1991 Annual Report to the Florida Legislature: Executive Summary 2 (Dec.1991)(“The Commission continues to combat cuts to the Juvenile Justice Reform budget.”); Commission on Juvenile Justice, Legislative Consensus Conference Report 8 (Nov.1991)(“There was overwhelming agreement by participants at the Consensus Conference that the funding level for juvenile justice programs was deplorable.”); Juvenile Justice System Review Task Force, Final Report of Findings and Recommendations 31 (Mar. 1990)(“The Task Force finds that the core
deficiencies of Florida’s juvenile justice system are the result of lack of funding”).
A.A. v. Rolle, 604 So.2d 813, 819 (Fla.1992).
The instant case is closely analogous to Miller v. Florida, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987).[3] In Miller, the retrospective application of amendments to Florida’s sentencing guidelines, which increased the defendant’s recommended sentence from a range of 3^-4/é years to a range of 5)6-7 years, was held unconstitutional. Notably, these ranges could be lawfully exceeded by the trial court. Thus, the defendant could not “definitively” show that he was receiving a harsher sentence under the new guidelines; the recommended range of 3]6-4]£ years derived under the old guidelines could have been lawfully exceeded to result in the same sentence imposed under the amended guidelines. Id. at 432, 107 S.Ct. at 2452. Nonetheless, the retrospective application of the revised guidelines was held unconstitutional; the defendant “plainly” had been “substantially disadvantaged” by the new guidelines since they presumptively imposed a sentence that could only be imposed under the old guidelines once the presumption of a lesser sentence was defeated. Id. at 432-33, 107 S.Ct. at 2452-53.
The 1994 amendments at issue, in creating a presumption that adult sanctions were appropriately imposed, similarly work to the juvenile defendant’s detriment by erecting a presumption of harsher punishment. Furthermore, as discussed, this presumption is but one of several new provisions, each of which favors the imposition of adult sanctions. Thus, while the 1994 amendments will not necessarily result in adult sanctions, they create a sufficient increase in the risk of such punishment so as to render their retrospec *640 tive application unconstitutional. See also State v. McGriff, 537 So.2d 107 (Fla.1989)(finding unconstitutional the retrospective application of a law mandating affir-mance of a departure sentence if any of the stated grounds were valid, where the prior law required a remand for resentencing if any ground was invalid, although there was no guarantee of a lesser sentence under the old law).
The majority concludes that the new presumption of appropriateness is not a “real change” since a trial court’s findings of fact are always presumed correct. Slip. Op. at 637 n. 1. However, whether the imposition of adult or juvenile sanctions is appropriate in any given case is a mixed question of both law and fact, to which a lesser degree of deference is generally afforded on appeal. See State v. Setzler, 667 So.2d 343, 344-45 (Fla. 1st DCA 1995)(“Aspects or components of the trial court’s decision involving legal questions are subject to de novo review, while factual decisions by the trial court are entitled to deference commensurate with the trial judge’s superior vantage point for resolving factual disputes.”). Furthermore, the new statutory presumption must be construed to impose a greater degree of deference to the trial court than that which would otherwise exist in order to give full effect to this amendment. See Acosta v. Richter, 671 So.2d 149, 153 (Fla.1996)(“[A] ‘statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts.’ ’’)(quoting State ex rel. City of Casselberry v. Mager, 356 So.2d 267, 269 n. 5 (Fla.1978)).
CONCLUSION
The apparent purpose, and plain effect, of the 1994 amendments is to make it more likely that a juvenile will be sentenced as an adult. I would vacate appellant’s sentence and remand for a new hearing and a contemporaneous written order on the question of whether to apply juvenile or adult sanctions, strictly applying the provisions of section 39.059(7), Florida Statutes, as explained in Troutman and held in light of conditions as they were at the time of the former hearing.[4]

. See, e.g., Jones v. State, 657 So.2d 23 (Fla. 4th DCA 1995); Pearson v. State, 657 So.2d 21 (Fla. 2d DCA 1995); Walker v. State, 656 So.2d 950 (Fla. 5th DCA 1995); Knight v. State, 656 So.2d 593 (Fla. 2d DCA 1995); Philmore v. State, 656 So.2d 270 (Fla. 4th DCA 1995); Wood v. State, 655 So.2d 1155 (Fla. 5th DCA 1995); Gammage v. State, 655 So.2d 183 (Fla. 4th DCA 1995); Crain v. State, 653 So.2d 442 (Fla. 2d DCA 1995); Satalino v. State, 652 So.2d 1231 (Fla. 2d DCA 1995); Sales v. State, 652 So.2d 513 (Fla. 4th DCA 1995).

. While Miller applied the older language of ex post facto jurisprudence, in that it spoke of a "disadvantage" to the defendant, the United States Supreme Court has since explained that the Miller decision was not dependent on this language and that Miller remains viable under the current, more restrictive test, which requires either a change in the definition of criminal conduct or an increase in the penalty by which a crime is punishable. Morales, 514 U.S. at - n. 3, 115 S.Ct. at 1602 n. 3.

. In the court's oral pronouncement and in the written order, the court mentioned the seriousness of the offenses and the short term nature of • any juvenile punishment that might be meted out due to the present age of the offender. There is no basis in the record to conclude that any of the other criteria was considered. The written order, instead of being filed contemporaneously, followed approximately a week later.